## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE JUSINO,<br>        Plaintiff, | No. 3:22-cv-490 (SRU) |
| v. | |
| KRISTINE BARONE,<br>        Defendant. | |

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT
### AND PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff Jose Jusino ("Jusino") is a convicted prisoner in the custody of the Connecticut Department of Correction. On April 4, 2022, Jusino commenced the instant action *pro se* under 42 U.S.C. § 1983, against MacDougall-Walker Correctional Institution ("MacDougall") Warden Kristine Barone ("Barone"). Compl., Doc. No. 1.

Jusino's complaint raised three section 1983 claims against Barone: (1) First Amendment retaliation for Jusino's submission of a declaration in a federal case, *Reynolds v. Quiros,* Dkt. No. 3:21-cv-1064 (SRU), after which Barone denied Jusino an opportunity for a gymnasium job assignment; (2) First Amendment retaliation for Jusino's exercise of his right to redress his grievances, after which Barone rejected his grievance and denied him an appeal of her rejection; and (3) Eighth Amendment violation based on Barone's deliberate indifference to Jusino's mental health needs. *Id.* at 3-6; *see* Initial Review Order ("IRO"), Doc. No. 6 at 4-8. On initial review, Judge Sarah A. L. Merriam permitted Jusino's First Amendment retaliation claims to proceed against Barone in her individual capacity for damages and in her official capacity for injunctive relief.[1] *Id.* at 9.

---

[1] The publicly available information on the Department of Correction ("DOC") website shows that Jusino is now housed at Cheshire Correction Institution ("Cheshire"). *See Inmate Information,* CONN. DEP'T OF CORR.,

On February 7, 2023, Jusino filed a motion for summary judgment on his First Amendment retaliation claims. Pl. Mot. for Summ. Judg., Doc. No. 41. On March 3, 2023, Barone filed a cross motion for summary judgment. Def. Mot. for Summ. Judg., Doc. No. 44. Jusino also subsequently filed a motion for sanctions against Barone alleging that she had perjured herself and that she had failed to provide Jusino a copy of documents she filed before this Court. Mot. for Sanctions, Doc. No. 48.

For the reasons that follow, Barone's motion for summary judgment is **granted in part and denied in part**, and Jusino's motion for summary judgment and motion for sanctions are **denied**.

## I.      Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment). When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the

---

http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320660 (last accessed Sept. 29, 2023); *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that a court may "take judicial notice of relevant matters of public record."). Thus, I will not consider the merits of Jusino's official capacity claims for injunctive relief because his transfer to Cheshire renders moot his official capacity claims against MacDougall Warden Barone. *See McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (stating inmate's transfer from prison facility moots claims for declaratory or injunctive relief against officials of transferring facility). Accordingly, Jusino's official capacity claims are **dismissed as moot**.

nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Regarding materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied

if he can point to an absence of evidence to support an essential element of nonmoving party's

claim). In short, if there is no genuine issue of material fact, summary judgment may enter.

*Celotex*, 477 U.S. at 323.

In the context of cross motions for summary judgment, the same standard is applied. *See*

*Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). However, in deciding each motion, the

court must construe the evidence in the light most favorable to the non-moving party. *Id.*

## II.     Factual Background[2]

After review of the statements of facts and the underlying record, I conclude that the

following facts are not in dispute.[3]

Jusino arrived at MacDougall on February 9, 2021, after a period of time in restrictive

housing. Def. Rule 56(a)1 at ¶¶ 1-2, Doc. No. 44-2; Barone Decl., Def. Ex. A at ¶ 8, Doc. No.

44-3. He held a position as a "tierman" within his housing unit at MacDougall. Def. Rule 56(a)1

at ¶ 7, Doc. No. 44-2.

---

[2] The following material facts are taken from the parties' Local Rule 56(a)1 statements of facts, as well as the underlying evidentiary record. *See* Compl., Doc. No. 1; Pl. Rule 56(a)1, Doc. No 41 at 9-11; Def. Rule 56(a)1, Doc. No. 44-2; Def. Rule 56(a)2, Doc. No. 44-15; Pl. Rule 56(a)2, Doc. No. 46. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)(3) provides that "each denial in an opponent's Local Rule 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Barone informed Jusino of the Local Rule 56(a) requirements in a Notice to *Pro Se* Litigant. Doc. No. 44-14. Thus, to the extent that a party's Local Rule 56(a)2 Statement does not comply with Local Rule 56, I may consider a Local Rule 56(a)1 statement of fact to be admitted if supported by evidence. *See Small v. Clements*, 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019); *Wu v. Nat'l Geospatial Intel. Agency*, 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in context of *pro se* plaintiff's failure to submit a Local Rule 56(a)2 statement, that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure.") (citation omitted).

[3] I cite only to the relevant paragraph in the Local Rule 56(a)1 statement where a party's cited evidence establishes an undisputed fact. The page numbers cited to in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

A. Plaintiff's Declaration

On August 3, 2021, Richard Reynolds, an inmate who was then housed at MacDougall, commenced a civil rights lawsuit in this District, *Reynolds v. Quiros*, Dkt. No. 3:21-cv-1064 (SRU). Def. Rule 56(a)1 at ¶ 46, Doc. No. 44-2. Reynolds named MacDougall Warden Barone as a defendant, in addition to Commissioner Angel Quiros, Deputy Commissioner William Mulligan, Deputy Warden Doran, Captain Scott Salius, and Property Officer Burns. *See Reynolds*, Dkt. No. 3:21-cv-1064 (SRU), Doc. No. 1. Reynolds grieved, *inter alia*, having his property confiscated when he was transferred to MacDougall from Northern, and he asserted claims of First Amendment retaliation, violation of the Eight Amendment, and violation of his Fourteenth Amendment right to due process. *Id.* In support of his complaint, Reynolds attached a declaration dated July 28, 2021, executed by Jusino, about Reynolds's property retention following Reynolds's transfer to MacDougall from Northern Correctional Institution. *Id.* at 25-27.

B. Gym Assignment

Barone has limited involvement with inmate prison jobs. Def. Rule 56(a)1 at ¶ 4, Doc. No. 44-2; Barone Decl., Def. Ex. A, at ¶ 10, Doc. No. 44-3. Hiring, assignments, scheduling and coordination of prison jobs are tasks delegated to and handled by her staff, and Barone's duties and responsibilities as a facility warden did not include interviewing or screening inmates for jobs. Def. Rule 56(a)1 at ¶¶ 5-6, Doc. No. 44-2.

On September 28, 2021, Barone spoke with Jusino. Pl. Rule 56(a)1 at ¶ 2, Doc. No. 41 at 9. Jusino asserts that he had a "verbal conversation" with her to resolve his concern about his denial of an opportunity for a job assignment at the MacDougall gym. *Id*. He avers that Barone informed him that she would not allow him to obtain a gym assignment because he had provided

a declaration in Reynolds's lawsuit. Pl. Decl. at ¶ 2, Doc. No. 41 at 7. Barone admits that Jusino "may have attempted to address concerns about a job" during that conversation. Def. Rule 56(a)2 at ¶ 2, Doc. No. 44-15; Barone Decl., Def. Ex. A at ¶¶ 38-40, Doc. No. 44-3.

Barone declares that she never discussed a gymnasium job for Jusino with Recreational Supervisor Rudolfo Alavarez ("Alvarez"), who has discretion for gym hiring decisions. Barone Decl., Def. Ex. A at ¶ 26, Doc. No. 44-3; Def. Rule 56(a)1 at ¶ 17, Doc. No. 44-2. Within MacDougall, gymnasium jobs are coveted by prisoners because those jobs have limited supervision and provide access to weight room equipment and interaction with a wide segment of the general population of prisoners. Def. Rule 56(a)1 at ¶¶ 15-16, Doc. No. 44-2; *See* Barone Decl., Def. Ex. A at ¶ 27, Doc. No. 44-3; Alvarez Decl., Def. Ex. H at ¶ 8, Doc. No. 44-10.

Alvarez avers that he took all of the steps necessary to hire Jusino for a gym position. Def. Rule 56(a)1 at ¶ 24, Doc. No. 44-2; Alvarez Decl., Def. Ex. H at ¶ 16, Doc. No. 44-10. He did not review Jusino's disciplinary history or check for separation profiles in connection with hiring Jusino for a gym position. Def. Rule 56(a)1 at ¶ 23, Doc. No. 44-2; Alvarez Decl., Def. Ex. H at ¶ 16, Doc. No. 44-10.[4]

C. Grievances

Barone served as the Unit Administrator at MacDougall and conducted reviews for Level 1 Grievances. Def. Rule 56(a)1 at ¶ 36, Doc. No. 44-2. The record shows that Barone entered dispositions for three of Jusino's Level 1 Grievances on November 23, 2021.

Jusino filed a Level 1 Grievance (CN 9602) dated September 22, 2021, assigned number 137-22-104 (received on September 24, 2021). In it, Jusino stated:

---

[4] In response to paragraph 26 of Defendant's Rule 56(a)1 statement that "Recreational Supervisor Alvarez never promised plaintiff a job in the gym[,]" Jusino wrote "Admit: Their was 'no promise.'" Pl. Rule 56(a)2 at ¶ 26, Doc. No. 46. In light of Jusino's *pro se* status, I construe his response as indicating that Alvarez did not "promise" a position because he had "agreed" to afford him with a gym position. *See* Pl.'s Decl. at ¶ 3, Doc. No. 46.

> Verbal Response D.W. Ogando: I was provided job assignment but I am not working/and is as needed. It was stated that is due to my past history. And I would not receive a 5 to 7 or 5 day job. I am being treated different th[a]n others/continue to be punish for my history.
>
> I would request a 5 or 7 day job assignment and that I am requested to work not as needed.

Def. Ex. D, Doc. No. 44-6. On November 23, 2021, Barone denied Jusino's Level 1 Grievance

for the stated reason that his claim of being punished based on his past history was

"unsubstantiated." *Id.*; Barone Decl., Def. Ex. A at ¶¶ 63-64, Doc. No. 44-3. Her response also

referenced Administrative Directive 10.1(4)(A), which provides that "no inmate shall have

entitlement or a legitimate expectation to any work, programmatic or education assignment or

compensation therefor." *Id.* She marked the box to show that he could appeal the matter within 5

calendar days. *Id.*

Jusino filed a second Level 1 Grievance (CN 9602) dated September 28, 2021, which was

assigned number 137-22-112 (received on September 30, 2021). Pl.'s Ex. 3, Level 1 Grievance,

Doc. No. 41 at 25. It stated:

> Verbal Response Warden K. Barone
> The[re] was discussion about providing me with the gym job. Due to the job I am classified not calling me to work. Warden Barone inform me in[]front of multiple witnesses that the job is no longer an option due to me writing a[n] affidavit for i/m Reynolds. This action is retaliation under Free Speech. I request I be provided the Gym job as I was promised and not retaliated.

*Id*. On November 23, 2021, Barone "[r]ejected" this Level 1 Grievance because Jusino had not

attached his CN 9601 to show attempt at an informal resolution.[5] *Id.* Her response explained the

---

[5] The Court takes judicial notice of the publicly available information on the DOC website, including the DOC administrative directives. *See* State of Connecticut Department of Correction Administrative Directive 9.6, *available at* https://portal.ct.gov/DOC/AD/AD-Chapter-9 (last accessed Sept. 29, 2023). Under Administrative Directive 9.6, DOC provides "a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." A.D. 9.6(1). It directs that an "inmate may attempt to resolve the issue verbally with the appropriate staff member or with a supervisor/manager," but "[i]f the verbal communication does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form." A.D. 9.6(6)(a)(i)(2). For a Level 1 Grievance, Directive 9.6 provides that an "inmate shall attach" the CN

specific requirements for a CN 9601 submitted with a Level 1 Grievance in compliance with

Administrative Directive 9.6. *Id.* She also checked the box to indicate that the "decision is not

subject to further appeal." *Id.*

      The record also includes Jusino's third Level 1 Grievance (CN 9602) assigned number

137-22-113 (received on September 30, 2021). Def. Ex. G, Doc. No. 44-9. In it, Jusino stated:

> Verbal Response Warden K. Barone
> I attempt to talk to Barone and Doran about my litigation that it[']s up for a hearing on
> 11/9/2021 to attempt to resolve this matter as required by the document that I provided
> them. I was told that they don't settle and don[']t care and threaten to have me
> transferred. To transfer[] me due to litigation is retaliation under free of spe[e]ch. I
> request to not be retaliated.

*Id.* On November 23, 2021, Barone "[r]ejected" that Level 1 Grievance because Jusino had not

attached his CN 9601, Inmate Request Form. Barone Decl., Def. Ex. A at ¶ 70, Doc. No. 44-3.

She again provided instructions under Directive 9.6 about the requirements for a CN 9601 and

checked the box to indicate that the "decision is not subject to further appeal." Def. Ex. G, Doc.

No. 44-9.

      On December 21, 2021, Barone was served as a defendant and executed a waiver in the

matter of *Reynolds v. Quiros*, 3:21-cv-1064 (SRU). Def. Rule 56(a)1 at ¶ 47, Doc. No. 44-2;

Barone Decl., Def. Ex. A at ¶ 32, Doc. No. 44-3. Attached to the complaint served on Barone

was a declaration executed by Jusino on July 28, 2021. Def. Rule 56(a)1 at ¶ 48, Doc. No. 44-2.

Barone avers that this was the first time she learned about the litigation in the matter of *Reynolds*

*v. Quiros*, 3:21-cv-1064 (SRU). Barone Decl., Def. Ex. A at ¶ 31, Doc. No. 44-3.

---

9601, Inmate Request Form, containing the appropriate staff member's response, to the CN 9602, Inmate Grievance
Form—Level 1." A.D. 9.6(6)(a)(ii)(2). For inmates who cannot attach a CN 9601 form, Directive 9.6 provides that
the inmate explain "why CN 9601, Inmate Request Form, is not attached to the CN 9602, Inmate Grievance Form-
Level 1." A.D. 9.6(6)(a)(ii)(2)(a).

### III.     Discussion

In his motion for summary judgment, Jusino argues that Barone acted in violation of the

First Amendment as a matter of law by retaliating against him (1) for providing his declaration in

support of Reynolds's litigation by using her authority to deny him a job assignment in

MacDougall; and (2) for his exercise of his right of redress by using her authority to reject his

grievance and deny him the right to appeal. Pl. Mem. at 4-6, Doc. No. 41. Barone argues that, as

a matter of law, Jusino cannot establish all requisite elements of causation for his claims of First

Amendment retaliation. Def. Mem. at 12-17, Doc. No. 44-1.

To sustain a First Amendment retaliation claim, a plaintiff must establish "(1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse

action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239

F.3d 489, 492 (2d Cir. 2001)). Protected speech or activity includes filing a lawsuit, an

administrative complaint, or a prison grievance. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir.

2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates

the right to petition [the] government for the redress of grievances guaranteed by the First and

Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and

citations omitted). "[O]nly retaliatory conduct that would deter a similarly situated individual of

ordinary firmness from exercising his or her constitutional rights constitutes an adverse action."

*Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted).

A plaintiff may demonstrate the necessary causal connection between the adverse action

and the protected conduct or speech through circumstantial evidence, including "(1) the temporal

proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior

good disciplinary record; (3) the plaintiff's vindication at a hearing on the matter; and (4)

9

statements by the defendant concerning his motivation." *Jones v. Wagner*, 2022 WL 1525134, at

*9 (D. Conn. May 13, 2022) (quoting *Merriweather v. O'Meara*, 2018 WL 10038783, at *5

(N.D.N.Y. Feb. 16, 2018)).

      If the plaintiff's case satisfies those elements, a defendant must show by a preponderance

of the evidence that the defendant would have taken the same adverse action against the plaintiff

even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274, 287 (1977); *see Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003)

("Regardless of the presence of retaliatory motive, however, a defendant may be entitled to

summary judgment if he can show dual motivation, *i.e.*, that even without improper motivation

the alleged retaliatory action would have occurred."). "A finding of sufficient permissible

reasons to justify state action is readily drawn in the context of prison administration" because

prisoners' retaliation claims are examined "with skepticism and particular care" due to the ease

with which they may be fabricated and because "courts have been cautioned to recognize that

prison officials have broad administrative authority." *Harnage v. Brighthaupt*, 168 F. Supp. 3d

400, 412 (D. Conn. 2016), *aff'd,* 720 F. App'x 79 (2d Cir. 2018) (internal citations and quotation

marks omitted).

      Barone acknowledges that Jusino filed a declaration in support of Reynolds's legal

action, *Reynolds v. Quiros*, 3:21-cv-1064 (SRU); s*ee* Def. Rule 56(a)1 at ¶¶ 46, 48, Doc. No. 44-

2, and that filing complaints and grievances is protected under the First Amendment. Def. Mem.

at 11, Doc. No. 44-1. For purposes of ruling on this motion, I consider Jusino to have satisfied

the first element of protected activity on his First Amendment retaliation claims.

Thus, I next consider whether Jusino has proffered evidence from which a reasonable jury could find the remaining elements of adverse action and causation between the protected speech and the adverse action.

A. Gymnasium Job

Barone maintains that the loss of a gym assignment does not constitute an adverse action and that Jusino cannot show a causal nexus between his submission of a declaration and Barone's conduct.

1. *Adverse Action*

Whether conduct is considered adverse depends on the context in which it occurs. "[I]n the prison context, [the Second Circuit has] defined 'adverse action' objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations and quotation marks omitted). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

Barone asserts that Jusino had no constitutional right to a prison job. Def. Mem. at 13, Doc. No. 44-1. I agree that Jusino has no constitutional right to any job within the prison. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (holding that there is no constitutional right to a job without underlying state law mandating jobs for prisoners); *Burton v. Salerno*, 2021 WL 3493621, at *10 (D. Conn. Aug. 9, 2021) (dismissing as not plausible due process claim based inmate's employment dismissal because inmate had "no liberty or property interest in his prison job"). But an adverse action for purposes of a retaliation claim need not involve the deprivation

of a constitutionally protected right. *See McCarroll v. Matteau*, 2012 WL 4380156, at *12 (N.D.N.Y. June 15, 2012). Notably, Jusino has provided evidence indicating that gymnasium jobs are highly prized within the prisoner community at MacDougall because they have limited supervision and afford an inmate access to weight room equipment and interaction with a wide segment the general population. *See* Barone Decl., Def. Ex. A at ¶ 27, Doc. No. 44-3; Alvarez Decl., Def. Ex. H at ¶ 8, Doc. No. 44-10.

Construing all reasonable inferences of fact in Jusino's favor, there is a genuine issue of fact about whether a loss of a prison assignment could deter a MacDougall inmate of ordinary firmness from exercising his constitutional rights. At the same time, I must deny Jusino's motion for summary judgment on his gym assignment retaliation because has not shown that he sustained an adverse action as a matter of law.

Barone further maintains that there can be no adverse action because Jusino was only recommended for a position in the gym job. Def. Mem. at 14, Doc. No. 44-1. In his declaration, Alvarez avers that he received correspondence about Jusino being a good candidate for a gym position at a time when there were no vacant positions. Alvarez Decl., Def. Ex. H at ¶¶ 12-13, Doc. No. 44-10. He avers that he never interviewed Jusino, never checked his disciplinary history and separation profiles, and never inquired about him with custody staff, all of which are necessary to hire an inmate. *Id.* at ¶ 16. But Jusino submits that DOC staff members—Dr. Santasiero, Captain Walsh, and Counselor Maiorana—informed Jusino that Alvarez had agreed to hire him at the gym, and that Jusino was shown an email communication to that effect. Pl. Decl. at ¶ 3, Doc. No. 46 at 13. Jusino declares that Alvarez spoke with him in the presence of Counselor Maiorana; that Alvarez stated that he had read about Jusino and had heard about him

from other gym workers; and that he informed Jusino that he would work at the gym three times a week as recommended by Dr. Santasiero. *Id*. at ¶ 4, Doc. No. 46 at 13.

I recognize that Jusino cannot rely on self-serving averments not substantiated by the evidentiary record to establish a genuine issue of material fact. *See Deebs v. Alstom Transp., Inc*., 346 F. App'x 654, 656 (2d Cir. 2009) (summary order) (finding that self-serving deposition testimony without "hard evidence adduced during discovery . . . is insufficient to defeat summary judgment."). But Jusino's averments are more than self-serving. He provides fairly detailed facts, including names and dates, to describe events within his personal knowledge. Thus, I conclude that Jusino's averments regarding his interactions with Alvarez constitute sufficient evidence to raise a triable issue regarding the credibility of Alvarez's statements about his history with Jusino. Further, the competing declarations at least raise a question of fact about the nature of any representations made to Jusino about his opportunity for an assignment to a gym position. Accordingly, I cannot grant Barone's motion for summary judgment on the basis of Jusino's inability to show he sustained an adverse action due to the loss of an opportunity for prison gym assignment.

## 2. *Causation*

Barone also argues that Jusino cannot show that his protected activity of providing Reynolds with a declaration has any causal connection to his inability to gain a gym position. Def. Mem. at 15-16, Doc. No. 44-1. Barone argues that she was not involved in prison job hiring decisions and that she did not learn about Jusino's declaration until she was served with Reynolds's complaint in December 2021.

13

As an initial matter, I agree that the record substantiates Barone's limited involvement with inmate prison jobs. Pl. Rule 56(a)1 at ¶ 4, Doc. No. 41 at 9; Def. Rule 56(a)1 at ¶¶ 4-6, Doc. No. 44-2; Barone Decl., Def. Ex. A, at ¶¶ 10-12, Doc. No. 44-3.[6]

Jusino, however, avers that he spoke with Barone on September 28, 2021, and that she then informed him that she would not allow him to obtain a gymnasium job assignment because he had provided Reynolds with a declaration regarding property that she permitted Jusino, but not Reynolds, to retain. Pl. Decl. at ¶ 2, Doc. No. 41 at 7. Barone admits that she spoke with Jusino on September 28, 2021, and that Jusino "may have attempted to address concerns about a job." Def. Rule 56(a)2 at ¶ 2, Doc. No. 44-15. Accordingly, Barone's evidence affords some corroboration of Jusino's averment.

Barone asserts that she only became aware of Jusino's declaration when she was served with the Reynolds complaint in December 2021. Barone Decl., Def. Ex. A at ¶ 31, Doc. No. 44-3. But the record shows that on September 28, 2021 she rejected a Level 1 Grievance that directly addressed Jusino's claim that she retaliated against him for "writing a[n] affidavit for i/m Reynolds." Pl.'s Ex. 3, Level 1 Grievance, Doc. No. 41 at 25 ("This action is retaliation under Free Speech. I request I be provided the Gym job as I was promised and not retaliated."). Thus, the record shows an issue of fact concerning the date at which Barone became aware of Jusino's declaration in support of Reynolds's litigation.

I must draw all reasonable factual inferences in the non-moving party's favor when considering Barone's motion for summary judgment. In doing so, I conclude that Jusino has

---

[6] I note that Jusino's own evidence indicates that Barone was generally not involved in hiring decisions for a gym position: inmate Francis avers that Barone informed him she has nothing to do with prisoner jobs in response to his request for a gym job (Francis Decl. at ¶ 2, Doc. No. 41 at 13); and inmates Walsh, Bova, and Halladay aver that no warden or deputy warden was required to approve their gym assignments. Walsh and Bova Decl. at ¶ 3, Doc. No. 41 at 15-16; Halladay Decl. at ¶ 9, Doc. No. 41 at 18. Furthermore, it is undisputed that Alvarez had discretion to hire inmates for gym positions. Def. Rule 56(a)1 at ¶ 17, Doc. No. 44-2; Pl. Rule 56(a)2 at ¶ 17, Doc. No. 46 at 8.

come forward with sufficient evidence to raise questions of credibility and fact concerning whether Barone had any involvement in precluding Jusino from the opportunity to work in the gym and whether she acted with a retaliatory animus in doing so. At summary judgment, such "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quotation marks omitted); *Martinez v. Payne*, 2021 WL 3493616, at *1 (D. Conn. Aug. 7, 2021) ("[The Court's] role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial.").

Barone has not advanced an argument, or adduced any evidence, to show that she would have taken the same adverse action against Jusino even in the absence of his declaration. *Mt. Healthy City Sch. Dist.*, 429 U.S. at 287; *see Scott*, 344 F.3d at 287-88. Accordingly, I deny Barone's cross motion for summary judgment on Jusino's retaliation claim concerning his denial of a gymnasium assignment.

B. <u>Grievance Rejection and Denial of Appeal</u>

Jusino claims that that Barone retaliated against him for exercise of his right to redress through the administrative procedure when she rejected his Level 1 Grievance he filed on September 28, 2021, complaining that he lost an opportunity for a gym job assignment because he provided a declaration for Reynolds. Pl. Mem. at 5-6, Doc. No. 41; Pl. Ex. 3, Doc. No. 41 at 25. Jusino argues that Barone abused her authority under Directive 9.6(5)(f) and maliciously manipulated the grievance procedure. *Id.* at 5. Barone argues that Jusnio's claim lacks merit because she correctly rejected his Level 1 Grievance. Def. Mem. at 15, Doc. No. 44-1.

Directive 9.6(5)(f) provides that "[t]he Unit Administrator shall ensure that no employee who is the subject of an investigation shall investigate or participate in the resolution of an administrative remedy related to that investigation." A.D. 9.6(5)(f). Under Directive 9.6, Level 1 Grievances are first reviewed for compliance with sections 5 and 6 of the Directive, and only Level 1 Grievances in compliance with those provisions "shall be processed." A.D. 9.6(6)(b)(i)(2). Directive 9.6(3)(h) defines the term "Rejected" as "[t]he request for administrative remedy fails to satisfy the procedural requirements of the particular requested remedy."

The record shows that on November 23, 2021, Barone rejected two of Jusino's Level 1 Grievances (Nos. 137-22-112 and 137-22-113), each of which complained about her retaliatory conduct. *See* Pl. Ex. 3, Doc. No. 41 at 25; Def. Ex. G, Doc. No. 44-9. Because she rejected those Level 1 Grievances as procedurally deficient, those grievances were not processed and did not proceed to an investigation. Thus, the record raises no inference that Barone was involved in an investigation for which she needed to recuse herself under Directive 9.6(5)(f); nor that she participated in the resolution of an administrative remedy related to an investigation for which she needed to recuse herself under Directive 9.6(5)(f). She merely rejected Jusino's Level 1 Grievance for procedural noncompliance and instructed him how to correct the deficiency. Furthermore, as noted in her response, Barone's rejection of Jusino's Level 1 Grievance conforms to the provisions of Directive 9.6. I therefore conclude that Barone's Level 1 Grievance rejection for noncompliance fails to raise any suggestion of a retaliatory animus.

Jusino also argues that he attempted to resolve his issue verbally with the appropriate staff member. Pl. Opp. at 3, Doc. No. 46. Directive 9.6 provides that an inmate "must attempt to seek informal resolution prior to filing [a] grievance" and "may attempt to resolve the issue

16

verbally with the appropriate staff member or with a supervisor/manager." A.D. 9.6(6)(a)(i)(1)-
(2). In instances in which the informal verbal resolution attempt is unsuccessful, as is the case
here, Directive 9.6 provides that an inmate pursuing his administrative remedies "shall submit a
written request via CN 9601, Inmate Request Form" to be "deposited in the collection box."
A.D. 9.6(6)(a)(i)(2)(a) & 9.6(a)(i)(5). The inmate's filing of a CN 9601 form is an important step
for filing a Level 1 Grievance because Directive 9.6 requires that an "inmate shall attach the CN
9601, Inmate Request Form, containing the appropriate staff member's response, to the CN
9602, Inmate Grievance Form—Level 1." A.D. 9.6(6)(a)(ii)(2). If the inmate is unable to attach a
CN 9601 form, Directive 9.6 provides that the inmate explains "why CN 9601, Inmate Request
Form, is not attached to the CN 9602, Inmate Grievance Form- Level 1." A.D. 9.6(6)(a)(ii)(2)(a).
Here, both of Jusino's Level 1 Grievances failed to comply with the two requirements for a
Level 1 Grievance under Directive 9.6(6)(a)(ii).

Jusino objects to Barone's fifth instruction in her rejection response detailing the CN
9601 requirements necessary to submit a compliant Level 1 Grievance: "The completed CN
9601, Inmate Request Form, shall then be addressed to the appropriate staff member starting
with District Administrator Rodriguez, etc and deposited in the appropriate collection box." Pl.
Mem. at 6, Ex. 3 at 25, Doc. No. 41. Jusino asserts that "(t)his is not stated in the Directive". Pl.
Mem. at 6, Doc. No. 41. Jusino may be correct that Directive 9.6 does not contain that exact
language. However, Barone's response essentially mirrors the Administrative Directive, except
she also indicates to whom Jusino should address his Inmate Request. *See* A.D. 9.6(6)(a).
Barone's instruction therefore reflects an attempt to assist Jusino in navigating the administrative
remedy procedure so that he could file a viable Level 1 Grievance in the future.

Jusino claims as evidence of a retaliatory animus the fact that Barone waited to issue her rejection until two months after he filed his Level 1 Grievance (No. 137-22-112). Pl. Mem. at 6, Doc. No. 41. Directive 9.6 states that a response to a Level 1 Grievance "shall be issued in writing within 30 business days of the receipt [of] the CN 9602, Inmate Grievance Form-Level 1." A.D. 9.6(6)(b)(i)(3). Thus, Barone's response was due on November 15, 2021.[7] Barone responded one week later, on November 23, 2021. Jusino fails to substantiate how a one-week delay constitutes evidence of retaliatory conduct, particularly in light of the fact that Directive 9.6 enabled him to file a Level 2 Grievance after he failed to receive a timely response. *See* A.D. 9.6(6)(b)(i)(4).

Finally, Jusino complains that Barone took retaliatory action by denying him an appeal of her Level 1 Grievance rejection. Pl. Mem. at 6, Doc. No. 41. That Level 1 Grievance shows that Barone checked the box to show that her rejection was not subject to further appeal. *Id.* at 25. Again, in doing so, Barone acted in conformity with provisions for noncompliant Level 1 Grievances. Under Directive 9.6, the reviewer must notify the inmate of his rejection but "the inmate shall have (5) calendar days to correct, the defect(s) and resubmit a request for administrative remedy," and if the resubmitted Level 1 Grievance "does not correct the defect(s), the request for administrative remedy shall be rejected and not subject to appeal." A.D. 9.6(6)(b)(i)(2)(a). Thus, the record fails to raise any inference that Barone improperly checked the box stating "not subject to appeal" to preclude Jusino a right to appeal the rejected Level 1 Grievance.

I therefore conclude that Jusino cannot prevail on his First Amendment retaliation claim because no evidence supports a causal connection between his protected activity of exercising his right to redress and Barone's Level 1 Grievance rejection. The evidence shows that even if

---

[7] Business days exclude weekends and the holidays of Columbus Day and Veterans Day.

Barone harbored a retaliatory animus based on Jusino's protected exercise of his right to redress, she issued a response that conformed to the provisions of Directive 9.6.[8]

In summary, no reasonable juror reviewing this evidentiary record could conclude that Barone rejected Jusino's Level 1 Grievance in retaliation for his exercise of his First Amendment rights. Accordingly, I deny Jusino's motion for summary judgment and grant Barone's motion for summary judgment with respect to Jusino's retaliation claim concerning the rejection of the Level 1 Grievance.

### C. Motion for Sanctions

Jusino requests that I impose sanctions against Barone's attorney for "professional misconduct." Mot. for Sanctions, Doc. No. 48. Specifically, Jusino claims that Barone's attorney should suffer sanctions (1) "for preparing/submitting" false declarations by Alvarez (Def. Ex. H); and (2) for failing to provide Jusino with a copy of Barone's memorandum in opposition to Jusino's motion to compel submitted on March 28, 2023. *Id.* at 1-3.

"Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent powers." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997). Under Federal Rule of Civil Procedure 11, sanctions may be appropriately levied "when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v.*

---

[8] Jusino points out that Barone reviewed and denied Jusino's Level 1 Grievance (No. 137-22-104), which also failed to provide a CN 9601. *See* Pl. Obj. at 3, Doc. No. 46. Def. Ex. D, Doc. No. 44-6. Barone retained "broad administrative authority" to act on Jusino's grievances that she determined to lack substantive merit. *See Harnage*, 168 F. Supp. 3d at 412. Her decision to excuse Jusino's procedural defect by acting on this Level 1 Grievance only furthered Jusino's satisfaction of his exhaustion requirement because a prison official waives the exhaustion affirmative defense by resolving a procedurally defective grievance. *See Castillo v. Hogan*, 2018 WL 1582514, at *7 (D. Conn. Mar. 31, 2018). Thus, Barone's substantive review of Jusino's Level 1 Grievance does not raise an inference that she acted with a retaliatory animus when she "rejected" Jusino's procedurally noncompliant Level 1 Grievance on the same day.

*Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). Rule 11 "is targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 34 (2d Cir. 1992) (citation omitted).

The court also has "inherent power to levy sanctions in response to abusive litigation practices". *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135 (2d Cir. 1998) (citations omitted) (affirming monetary sanctions where party's dilatory approach to discovery needlessly protracted discovery and required extensive judicial intervention).[9] However, the Supreme Court has cautioned courts to exercise their inherent power with restraint and discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). A court may award sanctions under its inherent authority "only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).[10] Thus, sanctions under both Rule 11 and the court's inherent authority are appropriate where there is a showing of an improper purpose.

Jusino's request for sanctions must be denied. I previously determined that the competing declarations from Jusino and Alvarez raised issues of fact and credibility. However, no evidence substantiates Jusino's contention that Barone's counsel knowingly, or in bad faith, prepared and submitted false declarations from Alvarez. Nor is there any evidentiary support to show that Barone's counsel failed to provide Jusino with a copy of the opposition to Jusino's motion to

---

[9] Inherent authority "stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (citations and quotations omitted).
[10] Under Rule 16(f) of the Federal Rules of Civil Procedure, a Court may issue sanctions related to misconduct relevant to scheduling or pretrial orders. Fed. R. Civ. P. 16(f). Under Rule 37 of the Federal Rules of Civil Procedure, a court may also impose sanctions for discovery-related abuses. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002). Those provisions are not relevant to Jusino's claim.

compel for an improper purpose or bad faith. In her opposition to Jusino's motion for sanctions,

Barone represents that Jusino was mailed a copy of the opposition memorandum. Def. Opp. at 4,

Doc. No. 49. Jusino has not filed any response to contest that representation.

I therefore conclude that imposing sanctions on Barone's counsel in this instance would

be inappropriate under either Rule 11 or as an exercise of the court's inherent authority.

Accordingly, Jusino's motion for sanctions is denied.

## IV.     Conclusion

For the foregoing reasons, Barone's motion for summary judgment, doc. no. 44, is

**denied in part** and **granted in part.** Jusino's motion for summary judgment, doc. no. 41, and

motion for sanctions, doc. no. 48, are **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of September 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

21